# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE AVALOS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GURDIP SINGH SANDHU,<br><br>　　　　　Defendant. | Case No.  1:21-cv-00538-NONE-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(ECF No. 8.)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

## I.

## INTRODUCTION

Currently before the Court is Plaintiff George Avalos's ("Plaintiff") motion for default judgment filed on June 18, 2021.  (ECF No. 8.)[1]  On July 21, 2021, the Court held a hearing on the motion for default judgment, at which no appearances were made on behalf of Defendant Gurdip Singh Sandhu ("Defendant").  Having considered the moving papers, the declarations and exhibits attached thereto, arguments presented at the July 21, 2021 hearing and the nonappearance of Defendant, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Plaintiff's motion for default judgment.

/ / /

---

[1]  All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

## II.

## BACKGROUND

### A.   Procedural History

Plaintiff filed this action on March 30, 2021.  (ECF No. 1.)  Defendant was served with a summons on April 15, 2021, and the executed summons was filed with the Court on April 19, 2021.  (ECF No. 5.)

No Defendant filed an answer, responsive pleading, or otherwise appeared in this action. On May 7, 2021, Plaintiff filed a request for entry of default against Defendant.  (ECF No. 6.) On May 7, 2021, default was entered against Defendant.  (ECF No. 7.)  On June 18, 2021, Plaintiff file the motion for default judgment that is currently before the Court.  (ECF No. 8.)  By minute order on June 21, 2021, the motion was reset before the undersigned for hearing on July 21, 2021.  (ECF No. 9.)  On July 21, 2021, the Court held a hearing via videoconference, with the courtroom open to the public.  Counsel Osman M. Taher appeared via video on behalf of Plaintiff.  Nobody appeared on behalf of Defendant in person nor on the public access telephone line, despite the courtroom being open to the public.

### B.   Plaintiff's Allegations

Plaintiff bring this action against Defendant alleging violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181, *et seq.*, as amended by the ADA Amendments Act of 2008 (P.L. 110-325) (the "ADA"), and California's Unruh Civil Rights Act, California Civil Code § 51, *et seq.* (the "Unruh Act").  (Compl., ECF No. 1; Pl.'s Mem. P. & A. Supp. Appl. Default J. ("Mem."), ECF No. 8-1.)  Plaintiff, an adult California resident, is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, ambulating, and sitting.  (Compl. ¶ 1.)  As a result of these disabilities, Plaintiff relies on mobility devices, including at times a wheelchair, to ambulate.  (Id.)  Plaintiff qualifies as member of a protected class under the ADA, and the regulations implementing the ADA as set forth at 28 C.F.R. §§ 36.101 *et seq.*  (Id.)  Prior to the filing of this action and at the time of his visit to Defendant's facility prior to instituting this action, Plaintiff suffered from a "qualified disability" under the ADA, and is also a holder of a Disabled Person Parking Placard.  (Id.)

On February 20, 2021, Defendant, an individual, owned the property located at 770 North Porter Road, Porterville, California, 93257 (the "Property"), upon which Save Center 4 (the "Business") is located.  (Compl. ¶ 2.)  Plaintiff alleges Defendant currently owns the property, and that the Business is a store open to the public, and is a "place of public accommodation" as that term is defined by 42 U.S.C. § 12181(7).  (Compl. ¶ 4.)

On February 20, 2021, Plaintiff went to the Business for the dual purpose of purchasing a beverage and to confirm that the Business, as a public place of accommodation, is accessible to persons with disabilities within the meaning of federal and state law.  (Compl. ¶ 9.)  Although parking spaces were one of the facilities reserved for patrons, thee were no designated parking spaces available for persons with disabilities that complied with the 2010 Americans with Disabilities Act Accessibility Guidelines ("ADAAG") on such date.   (Compl. ¶ 10.)  Specifically, instead of having architectural barrier free facilities for patrons with disabilities, Defendant's facility had barriers that included: (A) a built up curb ramp that projected from the sidewalk and into the access aisle, and the curb ramp was in excess of the maximum grade allowed by ADAAG specifications (§§ 406.1, 406.5, 502.4); (B) an accessible parking space that did not contain compliant accessible parking signage (§ 502.6); and (C) an accessible parking area that was not adequately marked (§§ 502.2, 502.3.3).  (Compl. ¶ 11.)

Due to the architectural barriers in violation of the ADA and ADAAG specifications, the parking, paths of travel, and demarcated accessible spaces at the Property, were inaccessible.  (Compl. ¶ 12.)  Parking spaces are one of the facilities, privileges, and advantages reserved by Defendant to persons at the Property serving the Business.  (Compl. ¶ 13.)

Because Defendant owns the Property, a place of public accommodation, Plaintiff alleges he is responsible for the violations of the ADA that exist in the parking area and accessible routes that connect the facility's entrance that serve customers to the Business.  (Compl. ¶ 14.)  Plaintiff alleges he would like to return to the Business but is dissuaded from doing so because of a lack of compliant facilities, and once made accessible, would like to patronize the Business again without fear of discrimination.  (Mem. 6.)

/ / /

**C.     Relief Sought**

Plaintiff sought the following relief in the complaint: (1) a preliminary and permanent injunction enjoining Defendant from further violations of the ADA, and Unruh Act, with respect to its operation of the Business and Property; (2) an award of actual damages and statutory damages of not less than $4,000 per violation pursuant to the Unruh Act; (3) an additional award of $4,000 as deterrence damages for each violation pursuant to Johnson v. Guedoir, 218 F. Supp. 3d 1096 (E.D. Cal. 2016);[2] and (4) for reasonable attorneys' fees, expenses, and costs, pursuant to 42 U.S.C. § 12205; California Civil Code § 52.  (Mem. 6-7.)

**III.**

**LEGAL STANDARD FOR DEFAULT JUDGMENT**

"Our starting point is the general rule that default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible."  NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Pursuant to Federal Rules of Civil Procedure 55, obtaining a default judgment is a two-step process.  Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P. 55(b).  Federal Rule of Civil Procedure 55(b)(2) provides the framework for the Court to enter a default judgment:

> (b) Entering a Default Judgment.

> > (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury

---

[2]  As the Court finds below, while Plaintiff passingly refers to additional deterrence fees of $4,000 requested in the complaint, it does not appear Plaintiff has moved for such fees in the filed motion for default judgment, and the Court recommends only awarding the base statutory fees and no additional deterrence fees.

1    trial--when, to enter or effectuate judgment, it needs to:

2              (A) conduct an accounting;

3              (B) determine the amount of damages;

4              (C) establish the truth of any allegation by evidence; or

5              (D) investigate any other matter.

6    Fed. R. Civ. P. 55.

7        The decision to grant a motion for entry of default judgment is within the discretion of the

8    court. PepsiCo, Inc. v. California Security Cans, 238 F.Supp. 1172, 1174 (C.D. Cal. 2002). The

9    Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may

10   consider in exercising its discretion:

11       (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive
         claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the
12       action; (5) the possibility of a dispute concerning material facts; (6) whether the
         default was due to excusable neglect, and (7) the strong policy underlying the Federal
13       Rules of Civil Procedure favoring decisions on the merits.

14   Eitel, 782 F.2d at 1471-72.

15       Generally, once default has been entered, "the factual allegations of the complaint, except

16   those relating to damages, will be taken as true." Garamendi v. Henin, 683 F.3d 1069, 1080 (9th

17   Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed.

18   R. Civ. P. 8(b)(6) ("An allegation--other than one relating to the amount of damages--is admitted if

19   a responsive pleading is required and the allegation is not denied."). Accordingly, the amount of

20   damages must be proven at an evidentiary hearing or through other means. Microsoft Corp. v.

21   Nop, 549 F.Supp.2d 1233, 1236 (E.D. Cal. 2008). Additionally, "necessary facts not contained in

22   the pleadings, and claims which are legally insufficient, are not established by default." Cripps v.

23   Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted).

24   The relief sought must not be different in kind or exceed the amount that is demanded in the

25   pleadings. Fed. R. Civ. P. 54(c).

26                                     **IV.**

27                                 **DISCUSSION**

28       The Court first determines whether the Court properly has jurisdiction in this matter, and

1  then turns to the <u>Eitel</u> factors to determine whether default judgment should be entered.

2  **A.     Jurisdiction**

3  1.     <u>Subject Matter Jurisdiction</u>

4  Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to

5  that granted by Congress.  <u>U.S v. Sumner</u>, 226 F.3d 1005, 1009 (9th Cir. 2000).  Pursuant to 28

6  U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the

7  Constitution, laws, or treaties of the United States.'  "A case 'arises under' federal law either

8  where federal law creates the cause of action or where the vindication of a right under state law

9  necessarily turns on some construction of federal law." <u>Republican Party of Guam v. Gutierrez</u>,

10 277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting <u>Franchise Tax Bd.</u>

11 <u>v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 8–9 (1983) (citations omitted)).  "[T]he

12 presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint

13 rule,' which provides that federal jurisdiction exists only when a federal question is presented on

14 the face of the plaintiff's properly pleaded complaint." <u>Republican Party of Guam</u>, 277 F.3d at

15 1089 (citations omitted).

16 Plaintiff brings this action alleging violations of the Americans with Disabilities Act of

17 1990, 42 U.S.C. § 12101, *et seq.*  Therefore, the Court has original jurisdiction under 28 U.S.C. §

18 1331.  In addition, the Court has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's

19 related state law claims brought under California's Unruh Civil Rights Act, California Civil

20 Code § 51, *et seq.*

21 2.     <u>Service of Process on Defendant</u>

22 As a general rule, the Court considers the adequacy of service of process before

23 evaluating the merits of a motion for default judgment.  <u>See J & J Sports Prods., Inc. v. Singh</u>,

24 No. 1:13-CV-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); <u>Penpower</u>

25 <u>Tech. Ltd. v. S.P.C. Tech.</u>, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008); <u>Mason v. Genisco</u>

26 <u>Tech. Corp.</u>, 960 F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant]

27 in the earlier action, the default judgment is void and has no res judicata effect in this action.").

28 A person may be served by "delivering a copy of the summons and of the complaint to the

1  individual personally." Fed. R. Civ. P. 4(e)(2)(A).

2       The executed summons was returned to the Court on April 19, 2021, and the affidavit of

3  service demonstrates that Defendant Gurdip Singh Sandhu was served by personally delivering

4  copies of the summons and complaint on April 15, 2021, at 3758 E. Adams, Fresno, California,

5  93725.  (ECF No. 5.)  The Court thus finds service has been effectuated on Defendant in this

6  matter and shall now proceed to consideration of whether the Eitel factors weigh in favor of

7  granting Plaintiff's motion for default judgment.

8       **B.**    **The Eitel Factors Weigh in Favor of Granting Default Judgment**

9       The Court finds that consideration of the Eitel factors weighs in favor of granting default

10  judgment in favor of Plaintiff.

11       1.    Prejudice to Plaintiff if Default Judgment is Not Granted

12       Plaintiff filed this action on March 30, 2021, and Defendant was served on April 15,

13  2021.  (ECF Nos. 1, 5.)  If default judgment is not entered, Plaintiff, a disabled individual, is

14  effectively denied a remedy for the violations of the disability statutes alleged until such time as

15  the Defendant in this action decides to appear in the litigation, which may never occur.

16  Defendant has not filed an answer, a motion to dismiss, or otherwise appeared in the action;

17  Defendant failed to file any opposition to the instant motion for default judgment; and failed to

18  make an appearance at the July 21, 2021 hearing held on the instant motion.  (ECF No. 11.)

19       For these reasons, the Court finds Plaintiff would be substantially prejudiced if default

20  judgment is not granted and finds this Eitel factor weighs in favor of granting default judgment

21  in favor of Plaintiff.  See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014).

22       2.    The Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint

23       The second and third Eitel factors instruct the Court to evaluate the merits of the

24  substantive claims alleged in the complaint as well as the sufficiency of the complaint itself.  It is

25  appropriate for the Court to analyze these two factors together.  AMUR Equip. Fin., Inc. v. CHD

26  Transp. Inc., No. 117CV00416AWISKO, 2017 WL 5477379, at *5 (E.D. Cal. Nov. 15, 2017);

27  F.D.I.C. v. Quest, F.S., Inc., No. SACV 10-00710 DOC, 2011 WL 2560428, at *2 (C.D. Cal. June

28  27, 2011).  In doing so, the Court looks to the complaint to determine if the allegations contained

1  within are sufficient to state a claim for the relief sought.  Danning v. Lavine, 572 F.2d 1386, 1388

2  (9th Cir. 1978).

3        **a.**      **Americans with Disabilities Act**

4        One of the purposes of the ADA is "to provide clear, strong, consistent, enforceable

5  standards addressing discrimination against individuals with disabilities."   42 U.S.C. §

6  12101(b)(2).  "Congress enacted the statute on the premise that discrimination against the disabled

7  is 'most often the product, not of invidious animus, but rather the thoughtlessness and

8  indifference—of benign neglect.' "  Cohen v. City of Culver City, 754 F.3d 690, 694 (9th Cir.

9  2014) (quoting Alexander v. Choate, 469 U.S. 287, 295 (1985)).  "Therefore, the ADA proscribes

10  not only 'obviously exclusionary conduct,' but also 'more subtle forms of discrimination—such as

11  difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals'

12  full and equal enjoyment' of public places and accommodations."  Cohen, 754 F.3d at 694

13  (quoting Chapman v. Pier 1 Imps. (U.S.) Inc., 631 F.3d 939, 945 (9th Cir.2011)).  "An ADA

14  plaintiff suffers a legally cognizable injury under the ADA if he is 'discriminated against on the

15  basis of disability in the full and equal enjoyment of the goods, services, [or] facilities . . . of any

16  place of public accommodation.' "  Chapman, 631 F.3d at 952 (quoting 42 U.S.C. § 12182(a))

17  (alteration in original).

18        "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is

19  disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or

20  operates a place of public accommodation; and (3) the plaintiff was denied public accommodations

21  by the defendant because of her disability."  Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th

22  Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)).  Discrimination under the ADA is defined to include

23  "a failure to remove architectural barriers, . . . in existing facilities, . . . where such removal is

24  readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).  To state a claim for discrimination under the

25  ADA because of denial of public accommodations due to "the presence of architectural barriers in

26  an existing facility, a plaintiff must allege and prove that: '(1) the existing facility at the

27  defendant's place of business presents an architectural barrier prohibited under the ADA, and (2)

28  the removal of the barrier is readily achievable.' "  Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d

1134, 1138 (S.D. Cal. 2006) (quoting Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085

(D. Haw. 2000)); see also Wyatt v. Ralphs Grocery Co., 65 F. App'x 589, 590 (9th Cir. 2003).

    i.  Plaintiff has Established he is Disabled under the ADA

   Plaintiff must allege that he is disabled under the ADA. Molski, 481 F.3d at 730. The

ADA defines disability as "a physical or mental impairment that substantially limits one or more

major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include walking and

standing. 42 U.S.C. § 12102(2)(A). Plaintiff alleges he is substantially limited in performing one

or more major life activities, including but not limited to: walking, standing, ambulating, and

sitting; that he relies on mobility devices, including at times a wheelchair, to ambulate; that he

qualifies as member of a protected class under the ADA, and the regulations implementing the

ADA; and that he suffers from a "qualified disability" under the ADA, and is also a holder of a

Disabled Person Parking Placard. (Compl. ¶ 1.) Plaintiff further submits a declaration attesting

that his circulatory and cardiovascular systems are impaired, and as a result he is subject to falls, is

unsteady on his feet, cannot walk for any significant distance without have to periodically rest, and

often relies on mobility devices. (Decl. George Avalos Supp. Pl.'s Appl. Default J. ("Avalos

Decl.") ¶ 2, ECF No. 8-4.) Plaintiff also declares that physical barriers that affect him the most are

those related to travel and that grasping certain objects create an unnecessary danger of falling.

(Avalos Decl. ¶ 3.) Specific barriers that affect Plaintiff are lack of: accessible routes to and from

entrances, accessible routes inside facilities, accessible parking, handrails and support, and wide

enough doorways. (Id.) In addition to being dangerous for because of the danger of falling, these

types of barriers also affect Plaintiff's ability to use either a cane, rollator, or wheelchair if he tries

to gain access. (Id.)

   Taking the allegations in the complaint, as further attested to in Plaintiff's declaration, as

true for purposes of default judgment, Plaintiff has adequately established this element of his ADA

discrimination claim.

    ii.  Plaintiff has Established Defendant Owns, Operates, or Leases a Public
       Accommodation

   Plaintiff must allege that the Defendant "owns, leases (or leases to), or operates a place of

1  public accommodation."  42 U.S.C. § 12182(a); <u>Molski</u>, 481 F.3d at 730.

2         Plaintiff proffers that the "subject property is a business that is expressly identified as a

3  place of public accommodation, citing 42 U.S.C. § 12181(7)(B).  (Mem. 9.)  This section provides

4  that the following private entities are considered public accommodations: "a restaurant, bar, or

5  other establishment serving food or drink."  42 U.S.C. § 12181(7)(B).  Plaintiff alleges he visited

6  the Business to purchase a beverage, and in fact attaches a receipt demonstrating he did in fact

7  purchase a beverage on February 20, 2021.  (<u>See</u> Ex. 3, ECF No. 8-5 at 4; Avalos Decl. ¶¶ 4, 7.)

8  Plaintiff's counsel performed a public records search to determine the ownership of the Property,

9  attaches the results of such search, and declares that counsel has determined Defendant owns the

10 Property.  (Decl. Joseph R. Manning, Jr. Supp. Pl.'s Appl. Default J. ¶ 3 ("Manning Decl."), ECF

11 No. 8-3; Ex. 4, ECF No. 8-6 at 1-3.)

12        The Court finds Plaintiff has sufficiently alleged that the Defendant owns or operates a

13 place of public accommodation, for purposes of default judgment.

14             iii.    <u>Plaintiff was Denied Public Accommodations due to an Architectural Barrier</u>

15        Plaintiff must allege and prove that he was denied public accommodations by a defendant

16 because of his disability.  <u>Molski</u>, 481 F.3d at 730.  Here, Plaintiff may establish such denial by

17 demonstrating the facility presents an architectural barrier prohibited under the ADA, and the

18 removal of the barrier is readily achievable.  <u>Hubbard</u>, 433 F. Supp. 2d at 1138.

19             1)      Architectural Barrier

20        Congress entrusted the Attorney General with promulgating the implementing regulations

21 for Title III.  <u>Fortyune v. Am. Multi-Cinema, Inc.</u>, 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42

22 U.S.C. § 12186(b)).  Congress provided that these implementing regulations must be consistent

23 with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance

24 Board, which issued its final ADA Accessibility Guidelines for Buildings and Facilities

25 ("ADAAG") in 1991.  <u>Id.</u> (citing 42 U.S.C. § 12186(c); 36 C.F.R. Pt. 1191, App. A).  The

26 Attorney General adopted the ADAAG as the "Standards for Accessible Design," and they lay out

27 the technical structural requirements of places of public accommodation and are applicable during

28 the design, construction, and alteration of such facilities.  <u>Id.</u> (citing 28 C.F.R. Pt. 36, App. A).

1   "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility

2   Guidelines."  Chapman, 631 F.3d at 945.

3          Plaintiff alleges he experienced a built-up curb ramp that projected from the sidewalk and

4   into the access aisle in violation of ADAAG § 406.5; that the slope of the curb ramp was in excess

5   of the maximum grade allowed in violation of ADAAG §§ 406.1 & 502.4; an accessible parking

6   space did not contain compliant accessible parking signage in violation of ADAAG § 502.6; and

7   an accessible parking area was not adequately marked in violation of ADAAG §§ 502.2 &

8   502.3.3.[3]  (Mem. 10; Compl. ¶ 11; see also Ex. 3, ECF No. 8-5 at 2-3.)  Plaintiff alleges these are

9   violations of the law as a public accommodation must maintain in operable working condition

10  those features of its facilities and equipment that are required to be readily accessible to and usable

11  by persons with disabilities, 28 C.F.R. § 36.211(a) ("A public accommodation shall maintain in

12  operable working condition those features of facilities and equipment that are required to be

13  readily accessible to and usable by persons with disabilities by the Act or this part"); and

14  Defendant has failed to make alterations in a manner, to the maximum feasible extent, so that the

15  portion of the facility are readily accessible and usable to persons with disabilities, and specifically

16  those that require the use of wheelchairs, 42 U.S.C. § 12183(a)(2).[4]  (Mem. 10.)

17

---

18  [3]  The ADAAG guidelines are available at
    https://www.ada.gov/regs2010/2010ADAStandards/2010ADAStandards_prt.pdf (last accessed July 19, 2021).
19  "Curb ramps and the flared sides of curb ramps shall be located so that they do not project into vehicular traffic
    lanes, parking spaces, or parking access aisles."  ADAAG § 406.5 (2010).  "Curb ramps on accessible routes shall
20  comply with 406, 405.2 through 405.5, and 405.10."  ADAAG § 406.1 (2010).  "Parking spaces and access aisles
    serving them shall comply with 302. Access aisles shall be at the same level as the parking spaces they serve.
    Changes in level are not permitted."  ADAAG § 502.4 (2010).  "Parking space identification signs shall include the
21  International Symbol of Accessibility complying with 703.7.2.1 . . . Signs shall be 60 inches (1525 mm) minimum
    above the finish floor or ground surface measured to the bottom of the sign."  ADAAG § 502.6 (2010).  "Car
22  parking spaces shall be 96 inches (2440 mm) wide minimum and van parking spaces shall be 132 inches (3350 mm)
    wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3."
23  ADAAG § 502.2 (2010).  "Access aisles shall be marked so as to discourage parking in them."  ADAAG § 502.3.3
    (2010).

24  [4]  This section provides:

25          [W]ith respect to a facility or part thereof that is altered by, on behalf of, or for the use of an
            establishment in a manner that affects or could affect the usability of the facility or part thereof, a
26          failure to make alterations in such a manner that, to the maximum extent feasible, the altered
            portions of the facility are readily accessible to and usable by individuals with disabilities,
27          including individuals who use wheelchairs. Where the entity is undertaking an alteration that
            affects or could affect usability of or access to an area of the facility containing a primary function,
28          the entity shall also make the alterations in such a manner that, to the maximum extent feasible,

1    The Court notes that even on default judgment in ADA cases, plaintiffs often present the

2    results of an investigation by an independent consultant, such as a construction expert that takes

3    measurements, in support of the claim that there is an architectural barrier.  Nonetheless, taking the

4    allegations as true for purposes of default judgment as presented by Plaintiff in his complaint and

5    supported by declarations, and based on the applicable laws and regulations, the Court finds

6    Plaintiff has sufficiently alleged and demonstrated the presence of architectural barriers present at

7    the Property and Business which violate the ADA.

8        2)    Whether Removal of the Architectural Barrier is Readily Achievable

9        Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable

10   and able to be carried out without much difficulty or expense."  42 U.S.C § 12181(9).  Factors to

11   be considered in determining whether such removal is readily achievable include: "(A) the nature

12   and cost of the action needed under this chapter; (B) the overall financial resources of the facility

13   or facilities involved in the action; the number of persons employed at such facility; the effect on

14   expenses and resources, or the impact otherwise of such action upon the operation of the facility;

15   (C) the overall financial resources of the covered entity; the overall size of the business of a

16   covered entity with respect to the number of its employees; the number, type, and location of its

17   facilities; and (D) the type of operation or operations of the covered entity, including the

18   composition, structure, and functions of the workforce of such entity; the geographic separateness,

19   administrative or fiscal relationship of the facility or facilities in question to the covered entity."

20   Id.  Federal regulations provide examples of readily achievable steps to remove barriers including:

21   installing ramps, making curb cuts in sidewalks and entrances, widening doors, eliminating a

22   turnstile or providing an alternative accessible path, and creating designated accessible parking

23   spaces, among other examples.  28 C.F.R. § 36.304(b).

24   _____

25   the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving
     the altered area, are readily accessible to and usable by individuals with disabilities where such
26   alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the
     altered area are not disproportionate to the overall alterations in terms of cost and scope (as
27   determined     under     criteria     established     by     the     Attorney     General).

28   42 U.S.C. § 12183(a)(2).

Plaintiff argues that the question of whether removal of a barrier is readily achievable is an affirmative defense that is waived unless raised, Wilson v. Haria & Gogri Corp., 479 F. Supp. 2d 1127, 1133 n.7 (E.D. Cal. 2007), and that where a defendant fails to appear and answer in an action, a plaintiff's allegation in the complaint regarding the achievability of barrier removal is sufficient to establish that removal of the barrier is readily achievable in a default judgment setting, Vogel, 992 F. Supp. 2d at 1011. (Mem. 10-11.) The Court agrees.

The Ninth Circuit has not decided whether the plaintiff or defendant carries the burden of proving that removal of an architectural barrier is readily achievable, and the majority of district courts in the circuit have applied the Tenth Circuit's burden-shifting framework developed in Colorado Cross Disability Coal. v. Hermanson Family Ltd. P'ship I, 264 F.3d 999 (10th Cir. 2001). See Moore v. Robinson Oil Corp., 588 F. App'x 528, 530 (9th Cir. 2014); Vogel, 992 F. Supp. 2d at 1010; Ngoc Lam Che v. Boatman-Jacklin, Inc., No. 18-CV-02060-NC, 2019 WL 3767451, at *2 (N.D. Cal. Aug. 9, 2019). Under the Tenth Circuit's framework, the plaintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable, and then the burden shifts to the defendant who bears the ultimate burden of persuasion regarding the affirmative defense that the suggested method is not readily achievable. Vogel, 992 F. Supp. 2d at 1010 (citing Colorado Cross, 264 F.3d at 1006).

Plaintiff alleges that the Defendants have failed to maintain the features required to provide ready access to persons with disabilities, and that the barriers identified are easily removed without undue difficulty or expense. (Compl. ¶¶ 24, 25, 26.) Plaintiff specifically alleges these are the type of barriers identified by the Department of Justice as presumably readily achievable to remove, and that in fact, these barriers are readily achievable to remove. (Id. at ¶ 26.) Additionally, Plaintiff argues there are numerous alternative accommodations that Defendants could make that would provide a greater level of access if complete removal were not achievable. (Id.)

Plaintiff's allegation that the removal of the barriers is readily achievable is sufficient to satisfy his burden of production for purposes of default judgment. See Vogel, 992 F. Supp. 2d at 1011 (allegation that removal of barrier readily achievable sufficient for default judgment);

1    Johnson v. Hall, No. 2:11-CV-2817-GEB-JFM, 2012 WL 1604715, at *3 (E.D. Cal. May 7, 2012)

2    (same); Johnson v. Beahm, No. 2:11-CV-0294-MCE-JFM, 2011 WL 5508893, at *3 (E.D. Cal.

3    Nov. 8, 2011) (same).  Defendant has failed to meet their burden because they have failed to

4    appear and present any defense in this matter.

5          For purposes of default judgment, the Court accepts Plaintiff's allegations as true and finds

6    Plaintiff has sufficiently established that removal of the architectural barriers he encountered is

7    readily achievable.

8          **b.    California State Law Claims**

9          Plaintiff also brings a state law claim for violation of the California's Unruh Civil Rights

10   Act.  (Compl. ¶¶ 31-34.)  The Unruh Act provides that "[a]ll persons within the jurisdiction of this

11   state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal

12   accommodations, advantages, facilities, privileges, or services in all business establishments of

13   every kind whatsoever."  Cal. Civ. Code § 51(a).  Unlike the ADA, the Unruh Act permits the

14   recovery of monetary damages, in the form of actual and treble damages, at a statutory minimum

15   of at least $4,000.00 per violation.  Cal. Civ. Code § 52(a); Molski v. M.J. Cable, Inc., 481 F.3d

16   724, 731 (9th Cir. 2007); Vogel, 992 F. Supp. 2d at 1011.  After passage of the ADA in 1990, the

17   Unruh Civil Rights Act was amended to provide that a violation of the ADA constitutes a violation

18   of the Unruh Civil Rights Act.   Pickern v. Best W. Timber Cove Lodge Marina Resort, 194 F.

19   Supp. 2d 1128, 1131 (E.D. Cal. 2002); Cal. Civ. Code § 54.1(d) ("A violation of the right of an

20   individual under the Americans with Disabilities Act of 1990 . . . also constitutes a violation of this

21   section.").

22         As Plaintiff has stated a cause of action entitling him to relief under the ADA, Plaintiff has

23   also stated a claim entitling him to relief under the Unruh Act.  See Vogel, 992 F. Supp. 2d at

24   1011-12; Villegas v. Beverly Corner, LLC, No. 216CV07651CASSSX, 2017 WL 3605345, at *5

25   (C.D. Cal. Aug. 18, 2017); Johnson v. Singh, No. 2:10-CV-2547 KJM JFM, 2011 WL 2709365, at

26   *1–4 (E.D. Cal. July 11, 2011).  For all of the above stated reasons, the Court finds the second and

27   third Eitel factors weigh in favor of granting default judgment in favor of Plaintiff on the ADA

28   claim and the Unruh Civil Rights Act claim.

3.	The Sum of Money at Stake in the Action

The sum of money at stake in this action also weighs in favor of granting default judgment.  Default judgment is disfavored where large amounts of money are involved, or the award would be unreasonable in light of the defendant's actions.  G & G Closed Circuit Events, LLC v. Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012); PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002) ("Under the third Eitel factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct.").  In addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of $4,000.00, attorneys' fees in the amount of $3,675.00, and costs of $538.00, for a total award of $8,213.00.  (Compl. 8-9; Mem. 15-16; Ex. 5, ECF No. 8-7 at 2.)  This is not an excessive amount of money, nor does it seem unreasonable in light of the allegations contained in the complaint.  See Vogel, 992 F. Supp. 2d at 1012 (citing Moore v. Cisneros, No. 1:12–cv–00188 LJO SKO, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13, 2012) (noting an award of $10,119.70 on default judgment in ADA discrimination case was "not a relatively large sum of money, nor d[id] it appear unreasonable")); Johnson v. Huynh, No. CIV S–08–1189 JAM DAD, 2009 WL 2777021, *2 (E.D. Cal. Aug. 27, 2009) (holding injunctive relief and an award of $12,000.00 for ADA violations on default judgment was "relatively small award of damages").

As noted above, in one section of the motion, Plaintiff restates the relief sought in the complaint, including a request for "[a]n additional award of $4,000 as deterrence damages for each violation," in addition to the base amount of $4,000 in statutory fees under the Unruh Act. (Mem. 6-7.)  It appears based on all of the filings that Plaintiff is not seeking the additional deterrence fees.

Specifically, the subsection addressing the Unruh Act only expressly states that "[i]n the present matter, the Plaintiff is asking for **one** statutory minimum penalty assessment[] of $4,000.00 pursuant to California Civil Code § 52, and the actual attorney fees and costs that he has incurred in the amount of $4,213.00."  (Mem. 11.)  In the subsection addressing the Eitel factor of the "sum of money at stake," Plaintiff states he is seeking a total of $8,213.00, which

15

does not include the extra sum of $4,000 in deterrence statutory fees.  (Mem. 12.)  Plaintiff's proposed order/judgment attached to the motion for default judgment does not include the separate deterrence fee of $4,000.00, but rather only the single statutory fee of $4,000.00.  (ECF No. 8-8 at 2.)  Plaintiff concludes the motion with the statement requesting the Court issue the "proposed judgment."  (Mem. 16.)

Based on all of the above facts, and notice provided to the Defendant in the service of the motion for default judgment, the Court finds it appropriate only to award the base statutory fee of $4,000.00, and not any additional deterrence statutory fee.

For these reasons, the Court finds this <u>Eitel</u> factor weighs in favor of granting default judgment in favor of Plaintiff against Defendants.

### 4.   The Possibility of a Dispute Concerning Material Facts

The next <u>Eitel</u> factor considers the possibility of dispute concerning material facts.  As discussed above, Plaintiff has sufficiently alleged disability discrimination under the ADA and the Unruh Act by demonstrating his encountering of architectural barriers at the Property and Business.  Defendant has failed to appear and therefore has admitted all material facts alleged in Plaintiff's complaint.  <u>See</u> <u>Garamendi</u>, 683 F.3d at 1080; <u>PepsiCo, Inc. v. California Sec. Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.").  As the Court found above, Defendant was properly served and failed to appear.  Thus, there is no possibility of dispute regarding the material facts due to the factual allegations in the complaint being taken as true upon Defendant's default.

Accordingly, the Court finds this <u>Eitel</u> factor weighs in favor of granting default judgment in favor of Plaintiff against Defendant.

### 5.   Whether the Default Was Due to Excusable Neglect

Defendant has failed to file a responsive pleading or otherwise appear in the action.  IN addition to the summons and complaint, Defendant was served with the request for entry of default

as well as the motion for default judgment.  (ECF Nos. 6 at 5; 8-9 at 1-2.)[5]  Defendant did not file any opposition to the motion for default judgment and did not make an appearance at the hearing on the motion for default judgment.  Given these facts, there is no indication or evidence that the failure to respond was due to excusable neglect.  See Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) ("The default of defendant . . . cannot be attributed to excusable neglect.  All were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion.").

Accordingly, the Court finds this Eitel factor weighs in favor of granting default judgment in favor of Plaintiff against Defendant.

6.    The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." Eitel, 782 F.2d at 1472.  However, the policy favoring decisions on the merits does not weigh against entering default judgment where, as here, the Defendant's failure to appear has made a decision on the merits impossible at this juncture.  Given the prejudice to Plaintiff if default judgment is not granted as discussed above, and the merits of the allegations contained in complaint, granting default judgment in this case would not violate the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits.  See PepsiCo, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible.  Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

Accordingly, the Court finds the policy favoring decisions on the merit does not preclude entering default judgment against Defendants under these circumstances.

7.    The Eitel Factors Weigh in Favor of Granting Default Judgment

Based on the foregoing, the Court finds that the Eitel factors weigh in favor of granting

---

[5]  The Court notes that the proofs of service indicate that the motion for default judgment and the request for entry of default were served via postal mail to same address as personal service of the summons and complaint was effectuated.  (ECF Nos. 5; 6 at 5; 8-9 at 2.)

1  default judgment and recommends that Plaintiff's motion for default judgment be granted.  The

2  Court now turns to the types of relief requested by Plaintiff.

3  **C.    Relief Requested**

4        In addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of

5  $4,000.00, attorneys' fees in the amount of $3,675.00, and costs of $538.00, for a total monetary

6  award of $8,213.00.  (Compl. 8-9; Mem. 11, 15-16; Ex. 5, ECF No. 8-7 at 2.)

7        1.    <u>Injunctive Relief</u>

8        Plaintiff seeks an injunction compelling Defendants to comply with the ADA and the

9  Unruh Civil Rights Act by providing accessible routes and parking facilities for persons with

10  disabilities at the Property and Business, and to maintain accessible facilities so they remain

11  useable for persons with disabilities.  (Mem. 14-15; Compl. at 7-9.)  The ADA provides that

12  "injunctive relief shall include an order to alter facilities to make such facilities readily accessible

13  to and usable by individuals with disabilities to the extent required" by the ADA.  42 U.S.C. §

14  12188(a)(2).  A court may grant injunctive relief for violations of the Unruh Act under § 52.1(h).

15  <u>Vogel</u>, 992 F. Supp. 2d at 1015; Cal. Civ. Code § 52.1 ("An action brought pursuant to this section

16  is independent of any other action, remedy, or procedure that may be available to an aggrieved

17  individual under any other provision of law.").  "Injunctive relief may be granted 'when

18  architectural barriers at defendant's establishment violate the ADA.' "  <u>Johnson v. Pizano</u>, No.

19  2:17-CV-1655 TLN DB, 2019 WL 2499188, at *6 (E.D. Cal. June 17, 2019) (quoting <u>Vogel</u>, 992

20  F.Supp.2d at 1015).

21        Pursuant to federal and California law, Plaintiff is entitled to the removal of those

22  architectural barriers which he encountered on his visit to the facility that violated the ADA.

23  Therefore, an injunction should issue requiring Defendant to ensure there are accessible routes of

24  travel and parking facilities in compliance with the Americans with Disabilities Act Accessibility

25  Guidelines.

26        2.    <u>Statutory Damages</u>

27        Plaintiff seeks statutory damages in the amount of $4,000.00 as authorized by the

28  California Unruh Civil Rights Act.  The Unruh Act provides for minimum statutory damages of

1   $4,000.00 for each violation.  Cal. Civ. Code § 52(a).  Under the Unruh Act, statutory damages

2   may be recovered if a violation of one or more construction related accessibility standards denied

3   the plaintiff full and equal access to the place of public accommodation on a particular occasion.

4   Cal. Civ. Code § 55.56(a).  A plaintiff is denied full and equal access only when they personally

5   encountered the violation on a specific occasion.  Cal. Civ. Code § 55.56(b).  A litigant need not

6   prove any actual damages to recover statutory damages of $4,000.00.  <u>Molski</u>, 481 F.3d at 731.

7          As discussed above, Plaintiff sufficiently alleged violation of the ADA which established a

8   violation of the Unruh Act, and thus the Court finds that Plaintiff is entitled to statutory damages in

9   the amount of $4,000.00.[6]

10         3.   <u>Attorneys' Fees and Costs</u>

11         Plaintiff is requesting attorney's fees in the amount of $3,675.00 and costs in the amount of

12  $538.00.  (Mem. 15-16; Manning Decl. ¶¶ 6-8; Ex. 5, ECF No. 8-7 at 2.)  Pursuant to 42 U.S.C. §

13  12205, the party that prevails on a claim brought under the ADA may recover "a reasonable

14  attorney's fee, including litigation expenses," at the discretion of the Court.  "[U]nder federal fee

15  shifting statutes the lodestar approach is the guiding light in determining a reasonable fee."

16  <u>Antoninetti v. Chipotle Mexican Grill, Inc.</u>, 643 F.3d 1165, 1176 (9th Cir. 2010) (internal

17  punctuation and citations omitted).  The Ninth Circuit has explained the lodestar approach as

18  follows:

19         The lodestar/multiplier approach has two parts.  First a court determines the lodestar
           amount by multiplying the number of hours reasonably expended on the litigation by
20         a reasonable hourly rate.  The party seeking an award of fees must submit evidence
           supporting the hours worked and the rates claimed.  A district court should exclude
21         from the lodestar amount hours that are not reasonably expended because they are
           excessive, redundant, or otherwise unnecessary.  Second, a court may adjust the
22         lodestar upward or downward using a multiplier based on factors not subsumed in the
           initial calculation of the lodestar.  The lodestar amount is presumptively the
23         reasonable fee amount, and thus a multiplier may be used to adjust the lodestar
           amount upward or downward only in rare and exceptional cases, supported by both
24         specific evidence on the record and detailed findings by the lower courts that the
           lodestar amount is unreasonably low or unreasonably high.
25
    <u>Van Gerwin v. Guarantee Mut. Life Co.</u>, 214 F.3d 1041,1045 (9th Cir. 2000) (internal citations
26

27  _____
    [6]  As the Court found above, while Plaintiff passingly referred to additional deterrence fees of $4,000 requested in
28  the complaint, it does not appear Plaintiff has moved for such fees in the filed motion for default judgment, and the
    Court recommends only awarding the base statutory fees and no additional deterrence fees.

1  and punctuation omitted).

2        Under the lodestar method, the court will first determine the appropriate hourly rate for the

3  work performed, and that amount is then multiplied by the number of hours properly expended in

4  performing the work.  Antoninetti, 643 F.3d at 1176.  The district court has the discretion to make

5  adjustments to the number of hours claimed or to the lodestar, but is required to provide a clear but

6  concise reason for the fee award.  Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992).  The

7  lodestar amount is to be determined based upon the prevailing market rate in the relevant

8  community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).

9        **a.**      **Reasonable hourly rate**

10        Counsel Joseph R. Manning, Jr. ("Manning"), has been in practice since 2002, and normal

11  billing rate for ADA related work is $450.00.  (Manning Decl. ¶ 7.)  Manning also proffers that

12  work completed by unnamed associates are billed at an hourly rate of $375.00, and that the

13  attorneys that billed at this rate have a minimum of five (5) years of experience.  (Id.)  The Court

14  notes that the billing timesheet only identifies one other timekeeper identified as David Fitzgerald.

15  (ECF No. 8-7 at 2.)

16        The lodestar amount is to be determined based upon the prevailing market rate in the

17  relevant community, Blum, 465 U.S. at 896 (1984), which in this matter is the Fresno Division of

18  the Eastern District of California.  "To inform and assist the court in the exercise of its discretion,

19  the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's

20  own affidavits—that the requested rates are in line with those prevailing in the community for

21  similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465

22  U.S. at 895 n.11.  Plaintiff has presented no evidence regarding the reasonableness of the fees in

23  this district other than stating that the requested billing rate for Manning is a "fair rate for attorneys

24  with similar experience and expertise in this nuanced area of law," and that the associate rate is

25  "based on average attorneys' fees charged in the general geographic area with similar experience."

26  (Manning Decl. ¶ 7.)  Thus, the Court relies on its own knowledge of customary legal local rates

27  and experience with the legal market in setting a reasonable hourly rate.  Ingram v. Oroudjian, 647

28  F.3d 925, 926 (9th Cir. 2011).

In the Fresno Division of the Eastern District of California, across a variety of types of non-ADA litigation generally, attorneys with experience of twenty or more years of experience are awarded $325.00 to $400.00 per hour, attorneys with ten to twenty years of experience are awarded $250.00 to $350.00 per hour, attorneys with five to ten years of experience are awarded $225.00 to $300.00 per hour, and less than $200.00 per hour for attorneys with less than five years of experience.  See In re Taco Bell Wage & Hour Actions, 222 F.Supp.3d 813, 839 (E.D. Cal. 2016) (noting attorneys in Fresno Division with twenty or more years of experience are awarded $350.00 to $400.00 per hour, and attorneys with less than fifteen years of experience are awarded $250.00 to $350.00 per hour); Garcia v. FCA US LLC, No. 1:16-CV-0730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00 per hour to attorney with nearly thirty years of experience; $300.00 per hour to attorney with nearly fifteen years of experience; $250.00 per hour to attorney with ten years of experience; $225.00 per  hour to attorneys attorney with five years of experience; and $175.00 per hour to attorney with less than five years of experience); Mike Murphy's Enterprises, Inc. v. Fineline Indus., Inc., No. 1:18-CV-0488-AWI-EPG, 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) (awarding attorney with over twenty years of experience the $325.00 per hour requested, the $300.00 per hour requested by attorney with nearly twenty years of experience, and attorney with seven years of experience the requested $250.00 per hour); TBK Bank, SSB v. Singh, No. 1:17-CV-00868-LJO-BAM, 2018 WL 1064357, at *8 (E.D. Cal. Feb. 23, 2018), report and recommendation adopted, No. 117CV00868LJOBAM, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018) (awarding attorneys with over thirty-five years of experience $400.00 per hour, attorney with twenty years of experience $350.00 per hour; and attorney with ten years of experience $300.00 per hour); Roach v. Tate Publ'g & Enterprises, No. 1:15-CV-00917-SAB, 2017 WL 5070264, at *10 (E.D. Cal. Nov. 3, 2017) (awarding attorney with sixteen years of experience $325.00 per hour in copyright action); Sanchez w. Frito-Lay, Inc., No. 1:14-cv-00797-AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015) (in a wage and hour class action finding reasonable rate of $350.00 per hour for attorneys with more than twenty years of experience and $275.00 per hour for attorney with fourteen years of experience).

Specifically, in the context of cases alleging violations of the ADA, courts in this district have awarded fees ranging from $250.00 to $325.00 per hour within recent years. See Cervantes v. Vargas, No. 117CV00923LJOSKO, 2018 WL 2455615, at *7 (E.D. Cal. June 1, 2018) (awarding $275.00 per hour to attorney with nine years of experience and representation in 275 ADA actions); Block v. Christian, No. 1:16–cv–00650–LJO–SKO, 2017 WL 5248402, at *4 (E.D. Cal. Nov. 13, 2017) (finding $325.00 per hour to be a reasonable hourly rate for an attorney with twenty-four years of experience in general litigation and twelve years working on ADA cases); Trujillo v. Lakhani, No. 117CV00056LJOSAB, 2017 WL 1831942, at *8 (E.D. Cal. May 8, 2017) (finding $300.00 per hour to be reasonable rate both for attorney with over twenty-four years of experience in general litigation and twelve years with ADA actions and attorney with sixteen years of experience in civil rights litigation and eight years of ADA experience); Block v. Starbucks Corp., No. 115CV00991DADCKD, 2018 WL 4352906, at *7 (E.D. Cal. Sept. 11, 2018) (same); Trujillo v. Singh, No. 1:16–cv–01640–LJO–EPG, 2017 WL 1831941, at *3 (E.D. Cal. May 8, 2017) (finding $300.00 per hour to be a reasonable hourly rate for an attorney with over fifteen years experience); Tarango v. City of Bakersfield, No. 1:16-CV-0099-JLT, 2017 WL 5564917, at *6 (E.D. Cal. Nov. 20, 2017) (awarding $250.00 per hour to attorney with less than six-years of experience but extensive experience in disability discrimination, $275.00 per hour for attorney with eight years of experience, and $300.00 for attorney with ten years of experience); O'Campo v. Ghoman, No. 208CV1624KJMDBPS, 2017 WL 3225574, at *7 (E.D. Cal. July 31, 2017) (noting various cases in Sacramento awarding $300.00 per hour for attorneys with over twenty years ADA experience, and awarding $300.00 per hour in ADA action in Sacramento division for both an attorney with over thirty years of experience, and attorney with nearly twenty years of experience); Anglin v. Barron, No. 117CV00974AWIJLT, 2017 WL 5713375, at *8 (E.D. Cal. Nov. 28, 2017) (awarding $300.00 per hour rather than the requested rate of $425.00 where counsel had nineteen years of experience devoted exclusively to disability law); Johnson v. Patel, No. 217CV00573KJMCKD, 2017 WL 3953949, at *5 (E.D. Cal. Sept. 8, 2017) (same); Arroyo v. J.S.T. LLC, No. 118CV01682DADSAB, 2019 WL 4877573, at *14 (E.D. Cal. Oct. 3, 2019) (same in addition to

1  awarding $250 per hour for attorneys with eight years of experience), report and

2  recommendation adopted, No. 118CV01682DADSAB, 2020 WL 32322 (E.D. Cal. Jan. 2, 2020).

3          Accordingly, the Court recommends that Plaintiff receive $300.00 per hour for the services

4  of counsel Manning, and recommends that Plaintiff receive $250.00 per hour for the services of

5  counsel Fitzgerald.

6          **b.      Reasonable number of hours**

7          Counsel Manning proffers he expended 3.25 hours, and the timesheet reflects the hours

8  were expended reviewing information from the client; drafting the complaint; reviewing client

9  correspondence regarding claims; and reviewing the motion for default judgment.  (Manning Decl.

10 ¶ 7; ECF No. 8-7 at 2.)  The Court finds that 3.25 hours is reasonable for counsel Manning's work

11 on this action.

12         Manning proffers that his associate Fitzgerald expended 5.9 hours, and the timesheet

13 reflects the hours were expended examining the alleged violations of the ADA guidelines;

14 researching public records to determine ownership of the Property; preparing the materials

15 associated with the complaint; reviewing court filings; executing request for default; and drafting

16 the motion for default judgment and associated materials.  (Manning Decl. ¶ 7; ECF No. 8-7 at 2.)

17 The Court finds that 5.9 hours is reasonable for counsel Fitzgerald's work on this action.

18         **c.      Reasonable Attorneys' Fee Award**

19         The Court finds that: (1) counsel Manning reasonably expended 3.25 hours in this action at

20 a reasonable rate of $300.00 per hour, for a total of $975.00; and (2) counsel Fitzgerald reasonably

21 expended 5.9 hours in this action at a reasonable rate of $250.00 per hour, for a total of $1,475.00.

22         Accordingly, the Court recommends that Plaintiff be awarded attorneys' fees in the amount

23 of $2,450.00.

24         **d.      Costs**

25         Both the ADA and Unruh Act authorize the award of costs for an action.  See 42 U.S.C. §

26 12205; Cal. Civ. Code § 52(a).  Plaintiff seeks costs of $400.00 for filing fees, and $138.00 for

27 service expenses.  (ECF No. 8-7 at 2.)  The Court finds these expenses to be reasonable and

28 recommends awarding Plaintiff a total of $538.00 in costs.

**V.**

**CONCLUSION AND RECOMMENDATION**

The <u>Eitel</u> factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court.   See <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980).

Based upon the foregoing, the Court HEREBY RECOMMENDS that:

1.      Plaintiff's motion for default judgment be GRANTED;

2.      Plaintiff be AWARDED statutory damages in the amount of $4,000.00;

3.      Plaintiff be AWARDED reduced attorneys' fees in the amount of $2,450.00;

4.      Plaintiff be AWARDED costs in the amount of $538.00; and

5.      Plaintiff be GRANTED an injunction requiring Defendants to provide disability access by removing architectural barriers, providing accessible routes of travel, and compliant parking facilities, at 770 North Porter Road, Porterville, California, 93257, in accordance with the Americans with Disabilities Act and the Americans with Disabilities Act Accessibility Guidelines (ADAAG).

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.   Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties.   Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).   The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.   <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

/ / /

/ / /

/ / /

/ / /

1    Further, Plaintiff is HEREBY ORDERED to serve a copy of this findings and

2  recommendations on Defendant within three (3) days of entry.

3

4  IT IS SO ORDERED.

5  Dated:   __July 26, 2021__

   UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28